PRESTON H. HUFFT, Judge Pro Tem.
This action was instituted by James Mol-ton, Jr. to recover for personal injuries, property damage, loss of wages and medical expenses arising out of an automobile collision on U.S. Highway 61 in St. John the Baptist Parish. The trial court awarded judgment in favor of the plaintiff and against all defendants in solido in the amount of $1,800.00 for pain and suffering, $569.27 for property damage, $56.00 for medical expenses, set the expert fee of the doctor at $75.00 and dismissed plaintiff’s claim for loss of wages. It is from this decision that the defendants appeal.
The Honorable Ruche J. Marino handed down written Reasons for Judgment. These written reasons are so clear in presenting and disposing of the issues that we incorporate them into this opinion, to-wit:
Action for personal injuries and property damage filed by one James Molton, Jr., hereinafter referred to as plaintiff Molton, against Carl T. Avrard, David K. Avrard, and Manchester Insurance and Indemnity Company, hereinafter referred to as defendants, all as a result of an automobile collision on October 19, 1971 in the vicinity of US 61 and 200' West of La. 636-1, St. John the Baptist Parish, State of Louisiana.
Plaintiff Molton, claims total damages in the amount of $2,750.00 represented by $1,830.73 attributed to pain and suffering, $200.00 for lost wages, $150.00 in medical bills and $569.27 property damages.
The trial evidence indicates that James Molton Jr., owner of a '71 Ford Maver *559 ick, stopped at a local fruit stand in the vicinity of US 61 and La. 636-1. Plaintiff Molton, a shoe salesman, had stopped at the fruit stand in order to sell shoes and also to check the fruit out. After finishing his business, plaintiff Molton pulled onto highway 61 travel-ling west in the westbound outside lane. When he was 200 feet from his point of original entry, another vehicle owned and operated by David K. Avrard (1970 Rambler), hit the rear of plaintiff’s vehicle.
Plaintiff testified that immediately after hearing a noise he was hit from the back, causing him to roll some 200' down the airline, unfil he pulled to the neutral ground. He stated that his neck snapped. Plaintiff testified on direct that he was doing 50 MPH. At all times he positively stated that he was in the right hand (outside) lane, travelling west.
Defendant, David K. Avrard, testified that he and his brother were on the date of the accident en-route to Jackson, Mississippi, in order to view a football game. The automobile which he was driving was registered in his name and was insured in his name even though at the time of the accident he was 20. (A few days later he was to make 21.) On the particular day of October 29, 1971 while heading towards Baton Rouge in a westerly direction he noticed a car part in his lane (outside lane) and part in left (inside) lane. He stated that the immediate impact caused defendant to strike plaintiff in the middle of both lanes, however, he could not recall whether it was a direct or glancing blow. On this particular clear dry day defendant was doing 60 MPH. Immediately upon impact defendant applied his brakes. Defendant further stated that the debris residuals was in the middle of both lanes. The rear left of plaintiff was hit along with the right side of defendant’s automobile. After applying brakes defendant said that he took evasive action in the form of swerving vehicle causing him to skid to the left. However, he states his front hit the rear of plaintiff.
Trooper Allen Aubert, a state trooper with 9i/2 years investigative experience, testified that his accident report was made at the scene. Actually, the trooper heard the collision because he was back of the fruit stand. He testified that he heard no tires screeching. The Molton vehicle was approximately 4007 from La. 636-1 and US 61 intersection resting on West bound shoulder. The defendant’s vehicle was approximately 200' from said intersection — actually the established point of impact. It was established by the .trooper’s testimony that the Right West Bound lane was the point of impact. There were 90' skidmarks from defendant’s vehicle. The debris rested in the center. Plaintiff’s vehicle was hit from the rear while defendant’s vehicle was damaged in the front.
After considering all of the evidence produced it is the judgment of this court that the negligence of defendant was the proximate cause of the accident in question. It was a clear day on a roadway with no obstructions. Defendant should have seen the plaintiff’s car in question. There is no doubt that the evidence adduced at the trial leads to the inevitable conclusion that plaintiff was struck in the outside lane from the rear. The evidence does not bear out defendant’s version. Particular cases pertaining to rear end collisions are too numerous to require specific citations. Having determined the negligence of defendant we now turn to the question of damages:
By joint stipulation the deposition of the treating physician was introduced into the record. (Stipulation #2) Dr. Robert Charles Albrecht a practicing physician from Reserve testified that he has been a general practitioner for 10 years. The doctor was qualified and accepted as an expert ‘in the general practice of medicine.’
*560 Dr. Albrecht first saw plaintiff on November 2, 1971. The usual patient discomforts was translated to the doctor. November 2, 1971 was the Monday following the accident on October 29, 1971. His examination revealed:
‘On examination I found there was tenderness elicited to deep palpation over his lower cervical vertebrae. There was also rather marked muscle spasm elicited in the left paravertebral muscles of the cervical region on extreme lateral rotation of his neck. There was no significant limitation of motion either in flexion or hyper-extension of his neck or in the right lateral rotation. Multiple X rays of the neck region revealed no fracture or bony pathology. His treatment consisted of ultrasonic diathermy with sporadic stimulation and muscle relaxant tablets known by the brand name Norgesic. He received daily treatments of ultrasonic diathermy with sporadic stimulation on November 2, 3, 4 and 5. On November 8 I re-examined him. At this time there were no further subjective complaints. The physical examination was essentially negative, and I discharged him with instructions to report back on recurrence of any pain or discomfort. And I have not seen James Molton since his discharge on November 8, 1971.’
His diagnosis was a whiplash injury of the neck. Plaintiff’s subjective complaints was pain on the left lateral rotation of the neck and also pain in a lying position. The objective findings was tenderness to deep palpation of the lower cervical vertebrae and rather marked muscle spasm in the left paravertebral muscle of the cervical region on extreme lateral rotation of the neck.
Plaintiff testified that the next morning after the accident ‘his neck was stiff with back hurting.’ The total pain persisted for a couple of months. He was given some type of prescription and also took aspirin.
In summary plaintiff received a whiplash on October 29, 1971, saw his doctor on November 2, 3, 4 and 5. He was discharged by the doctor on November 8. On the daily visits he was treated with treatments of ultrasonic diathermy with sporadic stimulation. Norgesic, a muscle relaxant was prescribed on November 2, 1971. Norgesic was stated to be one of the better known pain relievers. Plaintiff’s total pain lasted for 2 months. There was no residual impairment of the time of trial. :
Plaintiff, seeks pain and suffering damages in the amount of $1,830.73. Plaintiff cites David v. Hamilton et al, 250 So.2d 242, 245 (La.App.1971) as authority for the proposition that ‘An award of $1,500 to plaintiff whose physical troubles were diagnosed as injuries to his back and neck and who returned to work in 18 days following the accident was neither manifestly excessive nor inadequate and should not be disturbed.’ Defendant distinguished the case and cites the LeDay v. New York Fire & Marine Underwriters Inc., La.App., (203 So.2d 562) and the Rochon v. Moore case (La.App., 218 So.2d 918) maximum value of cases of this type as $250.00. However, defendant previously cites the Livaccarri v. United Jewish Appeal, Inc. case (La.App., 126 So.2d 67) concerning burden of proof of the existence of injuries and causal connection. Defendant claims that the record is void of any explicit medical testimony that meets the Louisiana test of reasonable medical certainty.
The evidence indicates that plaintiff suffered an injury as a result of an automobile accident, which produced moderate or slight pain and which was cured without residual discomfort in a matter of eight weeks. It is the opinion of this court that plaintiff has suffered damages *561 for pain and suffering in the amount of $1,800. The medical testimony along with the witnesses’ testimony bears out the fact that plaintiff has covered his burden of proof by a preponderance of the evidence, therefore there will be judgment accordingly entered. The Livaccarri case, involved 2 accidents and the court was faced with the proposition of causation. In the case at bar the doctor’s testimony makes it very clear what the complaint was and his treatment. The reasonable medical certainty rule is definitely covered by the evidence adduced.
Plaintiff claims lost wages in the amount of $200.00. Plaintiff classifies himself as a shoe salesman. His salary is based upon commissions. He testified on direct that he makes $35.00 a day if lucky. He cannot sell if he has no automobile. He stated that he lost money by not selling shoes. He could never definitely establish how much money he lost as a result of not working due to the accident in question. As plaintiffs counsel plaintiff’s claim — plaintiff must present to doubt, Mr. Molton’s lost wages are speculative at best.’ This court cannot prove plaintiff’s claim — plaintiff must present to the court in a clear and explainable way the amount he lost. This was never done — therefore, I must disallow the lost wages claim, due to the fact that plaintiff has failed to prove his claim in this particular regard.
Plaintiff’s 1971 Ford was damaged in the accident. At pre-trial there was a stipulation that the damages were $569.-27. On the trial there seem to be some reversal of defendant’s position by the use of a deposition of plaintiff taken previously. The deposition was only admitted for impeachment purposes not for direct evidence. The best evidence is that evidence which is adduced on the witness stand at the trial on the merits. Plaintiff testified that he had an estimate for $569.27. He testified that Lousteau gave him an estimate of $771.-77 but could not recall an alleged $400.00 estimate. The deposition indicates that the $400.00 was an estimate made by plaintiff’s collision carrier. This court will accept the $569.27 estimate’because it was the one submitted by stipulation of counsel. Also, assuming no stipulation, the $771.70 estimate and the $400.00 estimate were never proven to the satisfaction of this court that said amounts represented the damages while the $569.-27 estimate was proven to be the fair and actual physical damages incurred.
It was stipulated that the expert fee in reference to Dr. Albrecht’s medical testimony was set at $75.00.
Also, stipulated was medical bills in the amount of $50.00 covering x-rays and doctor visits and $6.00 for prescription drug bills.
Coverage in the amount of a $5,000.00 liability policy afforded both defendants was also stipulated.
 It is well established in our jurisprudence that the findings of fact of the trial court will not be disturbed in the absence of manifest error. Epps v. Buzbee, 271 So.2d 543 (La.App. 1st. Cir., 1973); 20th Century Fox Corp. v. Lakeside Theaters, Inc., 267 So.2d 225 (La.App. 4th Cir., 1972); Clark v. Sears, Roebuck & Co., 254 So.2d 62 (La.App. 3rd Cir., 1971); Hooper v. Wilkenson, 252 So.2d 137 (La.App. 3rd Cir., 1971). We find no manifest error in the judgment of the lower court except in so far as the judgment is cast against Carl T. Avrard. There is no evidence in the record as to the liability of Carl T. Avrard. The plaintiff in oral argument in the lower court agreed to stipulate to the dismissal of Carl T. Avrard as a defendant. No particular attention was paid to the liability of Carl T. Avrard in the presentation of the case as the insurance carrier had stipulated coverage and petitioner’s claim was not in excess of the limits. The defendant raised it on appeal only to keep the record straight.
*562 The jurisprudence is equally clear that in the assessment of damages in tort cases much discretion must be left to the judge or jury. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971); Fox v. State Farm Mutual Automobile Insurance Company, 288 So.2d 42 (La.Sup.Ct.-1972); Walker v. Champion, 288 So.2d 45 (La.Sup.Ct.-1974). We find no abuse of discretion in the case before us. Reasonable minds might differ on a proper award but there is ample evidence in the record to support the award of the trial court.
Accordingly, the judgment of the lower court in so far as it pertains to Carl T. Avrard is reversed and the judgment of the lower court in so far as it pertains to David K. Avrard and Manchester Insurance and Indemnity Company, in solido, is affirmed in all respects. The defendant David K. Avrard and Manchester Insurance and Indemnity Company are to pay the cost of this appeal.
Reversed in part, affirmed in part.